# EXHIBIT A – SETTLEMENT AGREEMENT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Roger DeBenedetto, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> Thaxton Investment Corporation, Southern Management Corporation, Southern Finance of South Carolina, Inc. d/b/a Southern Finance, Quick Credit, Covington Credit, SoCo Finance, <br><br> Defendants. | C.A. No. 6:15-cv-02475-MGL |

## JOINT STIPULATION OF CONDITIONAL CERTIFICATION FOR THE PURPOSE OF SETTLEMENT; SETTLEMENT AND RELEASE

This Joint Stipulation of Conditional Certification for the Purpose of Settlement; Settlement and Release is made and entered into by and between the following parties: Plaintiff Roger DeBenedetto, individually and on behalf of the putative class, and Thaxton Investment Corporation/Southern Management Corporation and its subsidiaries and affiliates and their respective counsel of record, subject to the terms and conditions hereof and the approval of the Court.

### I. DEFINITIONS

A.  "Agreement" means this Settlement Agreement and Release.

B.  "Class Counsel" means The Law Office of John G. Reckenbeil, LLC.

FPDOCS 31464774.1

1

C.  "Class Members" or "Class" means all individuals who worked as Assistant Managers at any SMC branch office between October 1, 2014 and August 1, 2015 and who were compensated pursuant to the fluctuating workweek method and earned a bonus during those months.

D.  "Covered Period" means October 1, 2014 through August 1, 2015.

E.  "Effective Date" means the later of: (a) fifteen (15) calendar days after entry of the Settlement Approval Order referenced in Section III.H.(i); or (b) in the event of any appeal from any order described in this Agreement, two (2) business days after the exhaustion of all possible appellate proceedings.

F.  "Excluded Class Members" means all Class Members who exclude themselves from the Settlement by affirmatively choosing not to follow the Opt-In procedures and become a party to this lawsuit.

G.  "Notice" means the notice of the proposed class action settlement to be mailed to each Class Member to explain the terms of the Settlement and claim process.

H.  "Opt-In Period" means forty-five (45) days from the date the Notice, Consent to Sue, and Release are mailed.

I.  "Opt-In Plaintiff" means the "Originating Plaintiff" and all those Class Members who affirmatively opt-in to the lawsuit.

J.  "Originating Plaintiff" or "Plaintiff" means Roger DeBenedetto.

K.  "Parties" means all Opt-In Plaintiffs and SMC.

L.  "Released Claims" means all claims that were raised and asserted or that could have been raised and asserted in the above-styled action including, but not limited to, all such claims arising under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., the South Carolina

2

Wages Act, S.C. Code Ann. §§ 41-10-10 to 110., and/or equitable remedy of unjust enrichment or any other federal, state, or local statute, regulation, ordinance, or common law legal theory. Plaintiff's individual claim for retaliation under FLSA 29 U.S.C. § 215 is not, however, subject to this Agreement.

M.     "Settlement" means the terms, conditions, and obligations described in this Agreement.

N.     "Settlement Approval Order" means the Order Granting Final Approval of the FLSA Collective Action Settlement.

O.     "Settlement Fund" means the total amount paid out to the Class Members which equates to $107,298.88.

P.     "Settlement Share" means the amount paid to each individual Class Member. A brief computation on how this figure is calculated is explained in Section III.B.

Q.     "SMC" means Southern Management Corporation, Thaxton Investment Corporation, Southern Finance of South Carolina, Inc., and all affiliated or related companies, as well as their respective owners, officers, agents, employees, successors, heirs, spouses, administrators, executors, partners, assigns, and all past, present, or future representatives and predecessors.

R.     "SMC Counsel" means Fisher and Phillips LLP.

## II.     RECITALS

A.     DeBenedetto filed a Collective and Class Action lawsuit under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., The South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10 et seq., and/or equitable remedy of unjust enrichment against SMC on June 19, 2015 to recover unpaid wages on behalf of himself and the putative class (ECF No. 1).

3

The allegations contained in the Complaint related to SMC's use of the fluctuating workweek method of calculating overtime compensation for certain employees of SMC including DeBenedetto.;

B.      SMC filed an Answer denying the material allegations in the Complaint on July 15, 2015 (ECF No. 6);

C.      DeBenedetto filed a Motion to Amend the Collective and Class Action Complaint in which he sought to add a cause of action for retaliatory discharge under FLSA's 29 U.S.C. § 215(a)(3) on October 2, 2015 (ECF No. 26). On October 9, 2015, DeBenedetto's Motion to Amend was granted, with SMC's consent, and DeBenedetto filed his Amended Complaint on October 13, 2015. DeBenedetto's claim for retaliation applied only to himself and is specifically excluded from this Settlement Agreement.

D.      On October 2, 2015 DeBenedetto filed a motion for conditional certification seeking to utilize the FLSA's 29 U.S.C. § 216(b) two-step method to conditionally certify "All current and former Assistant Branch Managers employed by the Defendants after June 19, 2012 who at any time during their employment worked in excess of 40 hours and were paid one-half their regular rate for overtime hours as opposed to the typical one and one-half pursuant to Defendants' application of the FLSA's Fluctuating Workweek Method." (ECF No. 18)

E.      Simultaneous to the motion for conditional certification, DeBenedetto also filed a motion for partial summary judgement asking the court to rule as a matter of law that SMC's use of the FLSA's FWW method was improper. (ECF No. 19). SMC responded to DeBenedetto's Motion for Partial Summary Judgement and denied that the Company's use of the FWW method was improper. Moreover, SMC asserted that there was a question of fact as to whether DeBenedetto and the putative class members' claim of violation of the FLSA were barred based

4

on SMC's good faith reliance on previous audits and rulings by the United States Department of Labor regarding its use of the FWW method. (ECF No. 30). Subsequently, on January 8, 2016, the court denied DeBenedetto's motion for partial summary judgment and found that issues of fact existed. (ECF No. 38).

F. The central issue posed in DeBenedetto's motion for partial summary judgment was whether SMC's payments of nondiscretionary bonuses to their Assistant Managers, not related to hours worked, invalidated the "fixed salary" requirement of the FLSA's FWW method thereby invalidating SMC's use of the FWW method. If such were invalidated, the Assistant Managers would be owed time-and-a-half for every hour of overtime worked as opposed to half-time under the FWW.

G. Currently, there is a split among the circuits on whether bonuses not related to hours worked invalidates the use of the FWW method. *Sisson v. RadioShack Corp.*, No. 1:12-cv-958, 2013 U.S. Dist. LEXIS 40135 (N.D. Ohio Mar. 11, 2013) found invalidation of the FWW; whereas *Wills v. RadioShack Corp.*, No. 13 Civ. 2733, 2013 U.S. Dist. LEXIS 159727 (S.D.N.Y. Nov. 7, 2013) found that such did not invalidate the FWW method. Both relied upon a 2011 DOL Final Rule 76 Fed. Reg. 18832 and came to different conclusions.

H. To further complicate the matter, SMC included the Assistant Managers' PTO hours into their working hours resulting in the Assistant Managers being paid for overtime hours when they did not in fact work overtime.

I. Due to the uncertainty surrounding bonuses and the FWW, and for the purposes of this settlement, it is agreed upon by the parties that SMC has complied with 29 C.F.R. 778.114 (FWW), nondiscretionary bonuses may not invalidate the FWW, however SMC made a computational error in applying the method. Therefore, the Class is entitled to a repayment equal

5

to the difference between the amount of their bonuses calculated into the overtime rate and the amount of overtime compensation actually paid. *See, Mayhew v. Wells*, 125 F.3d 216, 219 (4th Cir, 1997); *Cash v. Conn Appliances, Inc.*, 2 F.Supp.2d 884, 896 (E.D. Tex. 1997). Plaintiff believes that a settlement premised upon this precedent is fair and reasonable at this time.

J.      The Parties have conducted extensive formal and informal discovery on issues relating to liability and damages; thereafter the Parties, by arms-length negotiations, reached a settlement of this matter; SMC denies all of the allegations in the lawsuit and any and all liability and damages of any kind to anyone with respect to the alleged facts or causes of action asserted in the lawsuit, but nonetheless, without admitting or conceding any liability or damages whatsoever, has agreed to settle the lawsuit on the terms and conditions set forth in this Settlement Agreement to avoid the burden, expense, and uncertainty of continuing the lawsuit;

K.      The Parties recognize that the outcome in the lawsuit is uncertain and that achieving a final result through the litigation process would require substantial additional risk, discovery, time, and expense;

L.      The Parties have agreed to settle this case as to the Originating Plaintiff and the Class Members.

M.      The Class Counsel has conducted an investigation and evaluation of the facts and law relating to the claims asserted in the lawsuit to determine how best to serve the interests of all potential Class Members and believe, in view of the costs, risks, and delay of continued litigation balanced against the benefits of settlement, that the settlement as provided in this Settlement Agreement is in the best interest of all and that the settlement provided in this Settlement Agreement represents a fair, reasonable, and adequate resolution of the lawsuit.

N.   For settlement purposes the Parties stipulate that an opt-in Class of persons who worked for SMC as Assistant Branch Managers between October 1, 2014 and August 1, 2015, who were paid pursuant to the FWW method and earned a bonus during that period, may be conditionally certified pursuant to FLSA's 29 U.S.C. § 216(b). The Parties further stipulate and agree that the class is at the very least "similarly situated" and that they even meet the more rigorous requisites for establishing a class under Fed. R. Civ. P. 23. More specifically, the parties stipulate and agree that:

i.   The Class is so numerous as to make it impracticable to join all Class Members and that there is an ascertainable Class;

ii.  There are common questions of law and fact including, but not limited to, the following: Whether SMC violated the FLSA's overtime provisions by improperly calculating their employees' overtime compensation under the FWW method where the Class members earned bonuses;

iii. DeBenedetto's claims are typical of the claims of the Class with respect to the failure to pay proper overtime wages during the Covered Period;

iv.  The prosecution of separate actions by individual Class Members would create the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct; and

v.   Questions of law and fact common to the Class predominate over any questions affecting any individual member in the Class and a class action is superior to other available means for the fair and efficient adjudication of the controversy.

O.   A proposed order laying forth the terms of the stipulated conditional certification and proposed notice is attached hereto as <u>Exhibit A.</u>

P. In addition to conditionally certifying the Class, it is also the desire of the parties to fully, finally, and forever settle, compromise, and discharge all disputes and claims related to this Agreement.

Q. Class Counsel have conducted a thorough investigation into the facts of the litigation, including conducting an extensive review of relevant documents, information, and data provided by SMC, and have diligently investigated the Class Members' claims against SMC. Prior to executing this Agreement, counsel for SMC provided Class Counsel with sufficient proof as to how SMC computed the overtime rate for all Class Members. Based upon the forgoing data and their own independent investigation and evaluation, Class Counsel is of the opinion that the settlement with SMC for the consideration and on the terms set forth in this Settlement is fair, reasonable, and adequate and is in the best interest of the class in light of all known facts and circumstances, including the risk of significant delay, defenses asserted by SMC, and potential appellate issues.

R. SMC and their counsel also agree that the Settlement is fair and in the best interest of the Class.

S. It is the desire of the Parties to first seek conditional certification to certify a specific class. Once the class is certified, all Class Members will be notified of the settlement and provided the opportunity to opt-in to the Class by returning an executed consent form. The Opt-In Notice will clearly explain to the Class that settlement is contingent upon this Court's approval of Settlement. Once all Opt-In Plaintiffs have been identified and have consented to joining the lawsuit, the Parties will seek this Court's approval of settlement on the terms laid forth below.

### III. PAYMENT OF SETTLEMENT FUND, RELEASE, AND DUTIES OF THE PARTIES

A. <u>Settlement Fund.</u> Within five (5) calendar days after the issuance of this Court's Settlement Approval Order, SMC will issue and send to the Opt-In Plaintiffs their Settlement Share. In addition to the Settlement Share, SMC shall pay the employer's share of all applicable payroll taxes on amounts treated as wages.

B. <u>Settlement Share.</u> Each Class Members' Settlement Share represents the amount of unpaid overtime wages plus an equal amount in liquidated damages. The amount of unpaid overtime wages was calculated by first identifying each month in which a Class Member: (1) worked overtime hours, and (2) earned a bonus for that month.

To compute each of the class members Settlement Share SMC recalculated the overtime rate for the Assistant Managers during the months they received a monthly bonus and worked overtime. To determine the new recalculated overtime rate SMC added the bonus to the class member's fixed monthly salary.

After the bonus was added to the salary, SMC then divided the new salary by the total number of hours worked for that particular month. The product of this quotient gave SMC the new regular rate, i.e., the amount each Assistant Manager actually received per hour for all the hours they worked.

Next, pursuant to SMC's application of the FWW workweek, the regular rate was multiplied by .05, as opposed to 1.5 under ordinary overtime computations. This computation gave SMC the new overtime rate that the Assistant Managers earned for each hour of overtime they completed.

Next, the new overtime rate was multiplied by the number of overtime hours worked for that particular month giving SMC the gross amount of overtime owed. To receive the net

9

amount of overtime actually owed, SMC subtracted the gross amount of overtime by the amount of overtime paid out under SMC's previous overtime calculations.

Finally, the net amount of overtime actually owed was then double to account for liquidated damages. An example of the Plaintiff's calculation of his Settlement Share is performed below.

| Month | Monthly Salary with Bonus | Total Hours Worked in Month | Regular Rate | Regular Rate x .5 (FWW) | Total O/T Hours Worked in Month | Recalculated O/T Amount | O/T Amount Already Paid | Net Difference |
|---|---|---|---|---|---|---|---|---|
| Nov 2014 | $2,015.00 | 166.85 | 12.07 | 6.03 | 18.35 | $110.8 | $90.98 | $19.82 |
| Dec 2014 | $1,965.00 | 197.71 | 9.93 | 4.96 | 37.71 | $187.4 | $174.98 | $12.42 |
| Jan 2015 | $1,840.00 | 179.87 | 10.22 | 5.11 | 19.87 | $101.63 | $101.46 | $0.17 |
| Feb 2015 | $2,015.00 | 191.7 | 10.51 | 5.25 | 31.7 | $166.6 | $151.29 | $15.31 |
| Mar 2015 | $2,140.00 | 177.88 | 12.03 | 6.01 | 13.31 | $80.06 | $62.87 | $17.19 |
| Apr 2015 | $2,090.00 | 189.3 | 11.04 | 5.52 | 29.3 | $161.75 | $137.39 | $24.36 |
| May 2015 | $3,060.00 | 273.98 | 11.16 | 5.58 | 33.98 | $189.76 | $164.36 | $25.4 |
| Jun 2015 | $1,840.00 | 180.3 | 10.2 | 5.1 | 22.54 | $115.01 | $108.5 | $6.51 |

Sum of Net Difference $121.18

The above was multiplied by 2 to account for Liquidated Damages

Settlement Share Mr. DeBenedetto stands to receive - **$242.36**

**Formula Used – Monthly Salary with Bonus was divided by Total Hours Worked in Month to compute the Regular Rate. Regular Rate was then multiplied by .5 pursuant the Fluctuating Workweek. The FWW Regular Rate was then multiplied by the Total Overtime Hours Worked in the Month to produce the Recalculated Overtime Amount. The Recalculated Overtime Amount was then subtracted by the Overtime Amount Already Paid to produce the Net Difference.

It was determined in performing the above calculations that some of the Class Members stood to receive amounts less than $1.00. In order to ensure that everyone received something under this settlement, SMC agrees to pay every Class Member standing to receiving less than $15.00 a fixed rate amount of $15.00. In addition to the fixed rate amount, these individual will

10

receive an equal amount as liquidated damages for a total amount of $30.00. The Settlement Share of each Class Member is attached hereto as Exhibit B.

C. Payment of Settlement Share. The parties recognize that the individual Settlement Shares include sums for wages and liquidated damages. The parties agree that the portion of the Settlement Share that accounts for unpaid overtime wages (50% of the Settlement Share) shall be deemed to constitute wages and thus shall be subject to W2 reporting and, therefore, that normal payroll taxes and witholdings shall be deducted from that portion of each claimant's Settlement Share pursuant to state and federal law and that SMC shall make all required contributions with respect to such wage payments, which amounts shall not be deducted from the payments made to Class Members. The remaining 50% of the Settlement Share constitutes liquidated damages under the FLSA and therefore is not unpaid overtime wages. The Claims Administer will issue to each claimant an IRS Form 1099 for that portion of their payments. Defendant shall pay its portion of payroll taxes and withholdings with respect to the liquidated damage portion of the Settlement Shares, which amount shall not be deducted from the payments made to the Class Members.

D. Exclusions from the Settlement. Class Members desiring to exclude themselves from the settlement must simply choose not complete and mail in their Notice during the Opt-In Period.

E. Release by Originating Plaintiff. Upon the Effective Date, the Originating Plaintiff releases and forever discharges SMC from any and all Released Claims (as defined above) in exchange for his Settlement Share and the award of attorney fees.

F. Release by Opt-In Plaintiffs. Upon the Court entering a Settlement Approval Order and the Opt-In Plaintiffs thereafter receiving and endorsing their Settlement Share checks they, (on behalf of themselves and their past, present and future agents, successors, heirs, spouses,

11

administrators, executors, partners, or assigns), release and forever discharge SMC (as defined above) from any and all Released Claims (as defined above). The Settlement Share checks will contain the following language:

> **"By endorsing this check, I release Southern Management Corporation and its affiliates from any and all claims that were brought or that could have been brought in the lawsuit known as *Roger DeBenedetto v. SMC Inc. et al, C.A. No. 6:15-cv-02475-MGL*, including but not limited to all overtime claims under the Fair Labor Standards Act and any other applicable state wage law claims, as referenced in the class notice."**

G. <u>Payment to Class Counsel.</u> Upon the Effective Date, SMC will deliver to Class Counsel a payment in an amount approved by the Court and *not to exceed* $120,000.00 to compensate Class Counsel for all attorneys' fees, costs, and expenses. This Settlement is not contingent on the Court's approval of any or all of the fees, costs, or expenses requested by Class Counsel.

H. <u>Claims Administration Fee.</u> SMC agrees to directly pay such administrator up to $10,000.00 for services administering the claims. These services include but are not limited to mailing out the Notice (unless handled by Plaintiffs' counsel); maintaining a website where relevant documents are posted; following up on any undeliverable claim forms, including making reasonable attempts to locate Class Members where the first notice is returned as undeliverable at the address provided; responding to Class Members' inquiries; and collecting claim forms from Class Members.

I. <u>Court Filings.</u> This Settlement is contingent on the following motions, filings, and orders:

i. An order approving the Parties stipulated Notice and consent to sue form that is be mailed to the Class Members.

ii. At least seven (7) calendar days after expiration of the Opt-In Period, Class Counsel will file with the court a motion and supporting memorandum seeking a Settlement Approval Order granting final approval of this Settlement (including any requested attorney's fees) as fair, reasonable, and adequate pursuant to 29 U.S.C. § 216(b) and Federal Rule of Civil Procedure 23(e), (h), authorizing settlement and dismissing the action with prejudice.

## V. TERMINATION

A.  Termination.  Any Party may terminate the Settlement Agreement if the Court declines to enter a Settlement Approval Order or judgment in the form submitted by the Parties. Class Counsel reserves the right to appeal the Court's ruling on attorney fees and costs. In no event shall the Settlement Agreement be terminated because of Class Counsel's disagreement with the award of fees/costs. The Parties agree not to encourage any Class Member or group of Class Members to opt-out of the Settlement. If the Settlement Agreement is terminated, it shall have no force or effect, and no Party shall be bound by any of its terms.

## VI. GENERAL PROVISIONS

A.  Admissibility.  Pursuant to Rule 408 of the Federal Rules of Evidence, neither this Settlement Agreement, nor any ancillary documents, actions, statements or filings in furtherance of settlement (including all matters associated with the mediation) shall be admissible or offered into evidence in the litigation or any other action for any purpose whatsoever.

B.  No Representations.  In entering into this Settlement, no Party relies on any statements, representations, or promises not described in this Agreement.

C.  Successors.  This Agreement will inure to the benefit of and be binding upon each Party's heirs, successors, and assigns.

13

D.  No Presumptions. In interpreting this Agreement, there will not be any presumption of interpretation against any Party.

E.  No Admissions and No Prevailing Party. This Agreement is the result of a compromise between the Parties, and nothing in this Agreement constitutes an admission of liability by any Party with regard to the subject matter of the Action.

F.  Duty to Defend. The Parties will abide by all terms of this Agreement in good faith and will fully support the Agreement's approval and enforcement, and will defend the Agreement from any legal challenge, whether by appeal or collateral attack.

G.  Applicable Law. This Agreement will be governed, enforced, and interpreted according to South Carolina Law.

IN WITNESS WHEREOF, and intending to be legally bound, The Parties hereby execute this Agreement on the dates indicated below.

Dated: 4·15/16            _____
                          Roger DeBenedetto

Dated: 4/15/16            John G. Recksenbeil
                          Class Counsel

Dated: 5/20/16            Connie Kondik, General Counsel
                          SMC

14

FPDOCS 31464774.1